414 A.2d 100

Marion ATKINS, Appellant at No. 64, Appellee at No. 65,

v.

URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH, a municipal authority, Appellee at No. 64, Appellant at No. 65,

v.

HOUSING AUTHORITY OF the CITY OF PITTSBURGH, Appellee at Nos. 64 and 65.

Supreme Court of Pennsylvania.

Argued March 10, 1980.

Decided April 30, 1980.

346

Joseph M. Zoffer, Pittsburgh, for appellant at No. 64.

Cosmos J. Reale, Murovich, Reale & Fossee, Warren D. Ferry, Pittsburgh, for appellant at No. 65.

George I. Buckler, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for Housing Authority of City of Pittsburgh in both cases.

Warren D. Ferry, Cosmos J. Reale, Pittsburgh, for Urban Redevelopment Authority.

Joseph M. Zoffer, Pittsburgh, for Marion Atkins.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

The Urban Redevelopment Authority of Pittsburgh (URA) is, and was at the time of the events precipitating this appeal, the owner of numerous properties in the City of Pittsburgh slated for urban redevelopment. URA entered into a contractual relationship with the Housing Authority of the City of Pittsburgh (HACP) wherein HACP agreed to provide many and varied services with respect to URA's

properties.[1] The contract makes it quite clear that URA
was to have no active role in the supervision, operation and

1. The agreement provided, in relevant part:

NOW, THEREFORE, in consideration of the mutual promises con-
tained herein, the parties hereto, intending to be legally bound here-
by, covenant and agree as follows:

3. MANAGEMENT OF ACQUIRED PROPERTIES
The Agent [HACP] shall supervise, direct and conduct the manage-
ment, operation, maintenance and leasing of the properties ac-
quired by the [Urban Redevelopment] Authority within the Renew-
al Program Area, including but not limited to the following activi-
ties;

(c) The Agent shall provide for extermination of all rats and other
pests in all acquired structures within the Renewal Program Area
as soon as such structures become vacant.
(d) Immediately upon vacation of a structure by its occupant, the
Agent shall notify all utility companies whose service connects to
said structure to cut, disconnect, or remove such utility connec-
tions and meters as may exist. The Agent shall perform any and
all tasks necessary to insure that all utilities within a structure are
disconnected and made safe before the structure is turned over to
the demolition contractor.

(f) Immediately upon vacation of a structure by its occupants, the
Agent shall cause all windows, doors and other openings of the
basement and first floor (second and other floors if a particular
situation warrants) of said structure to be closed, boarded-up or
otherwise sealed or barricaded, utilizing, whenever possible, mate-
rial from the said structure or other vacant structures, so as to
prevent entrance into said structure by unauthorized persons.
Inspections of all vacant structures shall be made to insure that no
entry into said structures is possible by unauthorized personnel.
Whenever necessary, such structures from which barricades have
been removed or which have been entered shall be reclosed.
(g) The Agent is hereby authorized to undertake such repairs or
maintenance on acquired property as are necessary to keep dwell-
ings habitable and vacant structures and land safe and clear of
debris; which repairs or maintenance may be performed without
the prior approval of the Authority, so long as the estimated cost of
said repairs does not exceed the maximum sum of $750.00.
4. PERSONNEL
(a) The Agent represents and agrees that it has or will secure at its
own expense, all personnel required for performance of all services
to be rendered under this Contract.

(b) All services required hereunder shall be performed by the
Agent or under its supervision. All personnel shall qualify for
assignments on the basis of past experience and/or training and
shall be authorized or permitted under state and local law to
perform the services for which they are engaged.

maintenance of its properties, and that HACP would assume all responsibility for the performance of these duties. HACP was, specifically, entirely responsible for preparing vacant properties for demolition when URA determined demolition was appropriate. Services in this regard included rat and other pest extermination, sealing (boarding up) the buildings, making sure all utilities were disconnected and making whatever repairs or maintenance necessary to keep the vacant land safe and clear of debris.

This action in trespass arises out of an incident occurring at a vacant house at 549 Junilla Street, Pittsburgh, a property owned by URA and scheduled for demolition as the house was uninhabitable. Pursuant to the terms of the agreement, HACP made several visits to 549 Junilla Street to remove debris and board up the house to prevent unauthorized entry. On October 11, 1973, Marion Atkins (plaintiff below), an employee of HACP, accompanied two fellow HACP employees to 549 Junilla Street. Atkins knew the house was to be demolished because it was uninhabitable and had gone there to be sure all of the utilities were disconnected. Atkins had been employed by the HACP for some three years as a general maintenance man and laborer, and had often inspected and disconnected utilities of buildings that were to be demolished.

Atkins was going to the basement of the house to determine if the water meter had been removed. When he stepped off the top step of the stairway leading to the basement, he fell down the stairs because the second step was missing.

Atkins testified that the stairway was well-lit, that he could see the bottom four or five steps, that he stepped on the first step, and that, if he had looked, he would have been able to see that the second step was missing. One of the other employees rushed to his aid, noticing as he did so that the second step was missing. Atkins sustained a fractured skull—fragments of the fractured skull caused brain damage.

Atkins filed suit against URA in the Court of Common Pleas of Allegheny County, alleging, *inter alia*, that URA was negligent in failing to repair or maintain a proper stairway and in failing to warn plaintiff of the dangerous condition. URA joined HACP as an additional defendant, asserting that HACP was solely responsible for the condition of the property and that, therefore, any liability for Atkins' injuries was HACP's alone, or that HACP was liable over to URA.

A jury returned a verdict against both defendants in the amount of $115,000.00. At the direction of the trial court, the jury also returned a "verdict over in favor of the Urban Redevelopment Authority of Pittsburgh against Housing Authority of Pittsburgh." Both URA and HACP filed post-trial motions for judgment *non obstante veredicto*; HACP also filed a motion to remold the verdict by removing the verdict over in favor of URA and against HACP.

A court *en banc* granted both defendants' motions for judgments n.o.v. The judgments n.o.v. were predicated on the finding that the plaintiff was contributorily negligent as a matter of law for failing to observe a dangerous and obvious condition, and that there was no breach of duty to plaintiff by URA according to section 343 of the Restatement (Second) of Torts (1965). As the motions for judgments n.o.v. were granted, there was no need for the court *en banc* to address HACP's motion to remold the verdict.

Atkins appealed to the Superior Court; HACP also filed a cautionary appeal to the Superior Court to preserve its position that the lower court had erroneously directed the molding of the jury's verdict. That court affirmed the granting of the judgments n.o.v. The Superior Court reversed the action of the trial judge in molding the verdict over to URA against HACP, but stated it was unnecessary to take any action to restore the original verdict because of the dispositions of the judgments n.o.v.

This Court then granted Atkins' petition for allowance of appeal (No. 64 March Term, 1979); we also granted URA's "cautionary" petition for allowance of appeal in the matter

of the motion to remold the verdict (No. 65 March Term, 1979). We now affirm the granting of the motions of both defendants for judgment n.o.v., for the following reasons.

■ Our standard of review is settled. A judgment n. o. v. should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. *Steward v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). In considering a motion for judgment n. o. v., the evidence, together with all reasonable inferences therefrom, is considered in the light most favorable to the verdict winner. *Miller v. Checker Cab Co.*, 465 Pa. 82, 348 A.2d 128 (1975). Applying these standards, we have no doubt that appellant Atkins failed to meet his burden of proving the liability of either defendant.

## URBAN REDEVELOPMENT AUTHORITY

■ As correctly noted by the court *en banc*, and as conceded by appellant Atkins, Brief for Appellant at 25, the instant case is governed by section 343 of the Restatement (Second) of Torts (1965), which provides:

Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees [2] by a condition on the land *if, but only if*, he (a) knows or by the exercise of reasonable care would discover the condition *and should realize that it involves an unreasonable risk of harm to such invitees, and*

*(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it,* and (c) fails to exercise reasonable care to protect them against the danger. (emphasis added).

It is clear from this section, and the comments thereto, that liability depends not simply on the status of the injured party (e. g., "licensee" v. "invitee"), but on many variables.

**2.** HACP, and its employees, are clearly invitees. *See* section 332, Restatement (Second) of Torts (1965). Atkins' complaint asserts that he was a business invitee.

Major variables include *the purposes of the invitation*,[3] the obviousness of the danger,[4] the likelihood that the invitee will realize the danger and will take steps to protect himself,[5] the nature of the land and the purposes for which it is used.[6]

The case of *Palenscar v. Michael J. Bobb, Inc.*, 439 Pa. 101, 266 A.2d 478 (1970), applied section 343 to a factual matrix strikingly similar to that presented here. In *Palenscar*, defendant, leasee/possessor of a warehouse, contracted with plaintiff and his father, electricians, to locate and repair a short in their electrical system. Defendant had informed plaintiff's father that the entire electrical system was obsolete and should be replaced, but that, as the warehouse was scheduled for condemnation, they had no intention of refurbishing or replacing the entire system.

Plaintiff located what he believed to be the source of the short, a circuit breaker, and, while attempting to remove a cover from the box enclosing the breaker, the damaged wires within the box caused an explosion, and plaintiff was severely burned. A jury returned a verdict of $51,000.00 in favor of plaintiff but a court *en banc* granted defendant's motion for judgment n. o. v.

On appeal, this Court affirmed. We stated section 343 of the Restatement (Second) of Torts, "has been cited numerous times by this Court as support for the proposition that 'the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous

3. Comment b provides an invitee is "entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of his invitation." Comment b further provides the possessor has the duty of "repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances."

4. Section 343A, *see* text *infra Known or Obvious Dangers*, is a further limitation on a possessor's liability to an invitee. *See* comment a to § 343.

5. Restatement (Second) of Torts § 343(b).

6. *See* comment e, section 343.

condition would be obvious to and discovered by his invitee.' " *Id.*, 439 Pa. at 105, 266 A.2d at 480. (cits. omitted). We further stated:

It is perfectly clear under Section 343(b), as quoted above, that [defendant] would have no duty to warn an invitee, such as [plaintiff] of a danger which was more obvious to and more likely to be discovered by [plaintiff] than by any employee of [defendant]. *Repyneck v. Tarantino,* 415 Pa. 92, 95, 202 A.2d 105, 107 (1964). Contrary to the terms of this section of the Restatement, *it was the expectation and the intention of both the possessor and the invitee in the case at bar that the electricians would "discover or realize the danger," and, accordingly, "protect themselves against it." That is precisely why they were hired.*

. . . . .

*It would be unjust to find that [defendant] should have repaired the system, and yet hold the company liable to one who had been employed to do exactly that. See Engle v. Reider,* 366 Pa. 411, 77 A.2d 621 (1951). (emphasis added)

*Id.*, 439 Pa. at 106–07, 266 A.2d at 480–81. *See also Brletich v. United States Steel Corporation,* 445 Pa. 525, 285 A.2d 133 (1971).

■ In the instant case, the variables all point to the same conclusion—there was no duty on the part of URA to *this* invitee, an employee of HACP, to warn of or protect against the danger of the missing step. The house was to be demolished. The record shows that HACP, and Atkins specifically, knew this and knew that no repairs were generally made to such houses. Any repairs that might have been made would have been by HACP, not URA. Under their contract, HACP had virtually total control over the supervision, management and maintenance of URA's properties and it was eminently more reasonable to suppose that HACP and its employees would discover any dangers on those properties than URA. Similarly, it was equally reasonable to expect HACP and its employees to take care in performing required services upon vacant property soon to be demol-

ished, to discover hazards and to take steps to protect themselves.

◼ From the foregoing, it is apparent it would be patently unjust to hold URA liable for the unfortunate injury of Mr. Atkins where he (through HACP) was the very instrument chosen by URA to exercise reasonable care to discover dangerous conditions on their property and to protect others from that danger (by sealing up, or taking "such repairs or maintenance . . . as are necessary"). That was precisely why HACP was hired! *See Palenscar v. Michael J. Bobb, Inc., supra*, 439 Pa. at 105, 266 A.2d at 480. Accordingly, the motion of URA for judgment n. o. v. was properly granted.[7]

## HOUSING AUTHORITY OF THE CITY
## OF PITTSBURGH

◼ It was also proper to grant HACP's motion for judgment n. o. v. At the time of trial, it was proper to *join* an employer as an additional defendant to a suit by a plaintiff-employee against a third-party tortfeasor.[8] This procedure was for the *sole and exclusive* purpose of protecting the original or third-party defendant's right of contribution from the employer (*but see* note 8, *supra*) if both

7. For this reason, URA's "cautionary appeal", in the matter of remolding the jury verdict, is dismissed as moot. Furthermore, as we find no duty, and hence no negligence on the part of URA, we do not reach the issue of plaintiff's contributory negligence and we express no opinion on the correctness of the lower court's finding of contributory negligence.

8. In 1974, the Workmen's Compensation Act, 77 P.S. § 481 (Supp. 1979–80) was amended to provide "In the event injury . . . to an employe is caused by a third party, then such employe . . . may bring [his] action at law against such third party, but the employer . . . shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract . . . .." This amendment precludes the joinder of an employer as an additional defendant to a suit brought by a plaintiff-employee against a third party, for injuries occurring on or after February 5, 1975. *Bell v. Koppers Co. Inc. v. United States Steel Corp.*, 253 Pa.Super. 590, 384 A.2d 980 (1978), reversed 481 Pa. 454, 392 A.2d 1380 (1978).

original defendant and additional defendant are found jointly liable. *Socha v. Metz*, 385 Pa. 632, 123 A.2d 837 (1956); *Burke v. Duquesne Light Co.*, 231 Pa.Super. 412, 332 A.2d 544 (1974).

However, the mere right to *join* the employer as an additional defendant did not reactivate a common law remedy for the employee against the employer—an employee's remedy under the Workmen's Compensation Act was and is his exclusive remedy against his employer. *McIntyre v. Strausser*, 365 Pa. 507, 76 A.2d 220 (1950). Therefore, the additional defendant-employer may raise the defense of workmen's compensation at the execution stage of the proceedings. *Id.* Should a jury conclude that the original defendant is not liable in fact, or should the original defendant otherwise be exonerated (as by a judgment n. o. v. in his favor), the verdict against the additional defendant-employer cannot stand, and a motion for judgment n. o. v., or a rule to show cause why the judgment should not be marked satisfied, would lie against the verdict winner. *Burke v. Duquesne Light Co., supra*, 231 Pa.Super. at 421, 332 A.2d at 548; *see also Grasha v. Ingersoll-Rand Co.*, 439 Pa. 216, 266 A.2d 710 (1970) *and Winters v. Herdt*, 400 Pa. 452, 162 A.2d 392 (1960). As the judgment n. o. v. in favor of URA was proper, and as HACP could not be held solely liable by virtue of the Workmen's Compensation Act, the court *en banc* committed no error in granting HACP's motion for judgment n. o. v.

Appeal of Marion Atkins at No. 64, March Term, 1979 is affirmed.

Appeal of Urban Redevelopment Authority at No. 65, March Term, 1979 is dismissed as moot.

ROBERTS, J., filed a concurring opinion.

EAGEN, C. J., concurred in the result.

ROBERTS, Justice, concurring.

I agree with the majority that judgment n. o. v. was properly entered in favor of both defendants, but for a

different reason. As the trial court, en banc, and the Superior Court concluded, appellant unreasonably failed to take precautions against an obvious risk. At trial, appellant testified that in the course of falling down the basement steps of the house he was inspecting, he was able to see that a step was missing. Thus, by his own testimony, appellant "fail[ed] to observe a dangerous condition plainly visible and nevertheless proceed[ed] without regard to his own safety." *Miller v. Board of Exeter*, 366 Pa. 336, 340, 77 A.2d 395, 398 (1951).