NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2300
_____

ROBERT L. KING, JR.;
DORIS REGINA KING,
                              Appellants

v.

ROCKTENN CP, LLC, As Corporate Successor to, Smurfit Stone
Container Corporation
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-06663)
District Judge:  Honorable Robert F. Kelly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 1, 2016

Before:   AMBRO, JORDAN, and SCIRICA, *Circuit Judges*.

(Filed: March 4, 2016)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Robert King, Jr. ("King") appeals an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment for defendant Rocktenn, CP LLC ("Rocktenn"). We will affirm.

## I.    Background[1]

In the early morning of January 28, 2011, King slipped and fell while working at 9820 Blue Grass Road in Philadelphia, Pennsylvania (the "premises"), a truck yard owned by Rocktenn.  At that time, King was working for Lily Transportation as a "yard jockey," responsible for hooking trailers to tractors, and unhooking them, and moving them in and out of loading docks.  Throughout his tenure at Lily Transportation, King worked exclusively at the premises.  At all relevant times, he was there as a business invitee.

Shortly before the accident, on January 26, 2011, a foot of snow fell in Philadelphia.  On the afternoon of January 27, King began his shift and was scheduled to work overnight until 6:00 a.m. on the 28th.  Upon arriving, he inspected the yard and found it had been plowed but that there was still some snow and ice, including between some of the trailers.  King did not, however, see any of it around the area between trailers five and six.  He concluded that the premises were "safe enough for [him] to do [his]

---

[1] Because this case was resolved on summary judgment, we view the facts in the light most favorable to King, the non-moving party. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010).

job." (A129.)  Sometime before 6:00 a.m., King was tasked with moving the trailer positioned at door six of the loading dock, which required him to hook that trailer onto a tractor.  To do so, King had to pass between trailers five and six for the first time that shift.  As he passed, King had his hand on a "hold bar" for stability, but slipped and landed on his backside.  (A130-34.)  In the course of his fall, he shifted all his weight onto the arm he was using to grasp the "hold bar," thus injuring his shoulder.  (*Id.*)  King completed his shift, including some overtime, and then sought medical attention.  Although initially diagnosed as a sprain, King's injury was ultimately determined to be more serious, and he had surgery on his shoulder to correct it.

In January 2012, King filed suit in the Court of Common Pleas of Philadelphia County against Rocktenn and a number of other defendants alleging, *inter alia*, negligence in permitting dangerous conditions to persist on the premises.[2]  He later amended his complaint, naming only Rocktenn as a defendant but maintaining a similar theory of liability.  Rocktenn removed the case to federal court in November 2013.  Following discovery, Rocktenn moved for summary judgment, and the District Court granted that motion.

This timely appeal followed.

---

[2] The complaint also included a loss of consortium claim by Mrs. King. That claim was also present in the amended complaint and is at issue in this appeal.

**II.    Discussion**[3]

We exercise plenary review over a District Court's grant of summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). "Our review is identical to the review performed by the district court." *Id.* "Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002).

As our jurisdiction in this case is based on diversity of citizenship, our review applies the substantive law of the Commonwealth of Pennsylvania. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) In Pennsylvania, according to the case of *Carrender v. Fitterer*, "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." 469 A.2d 120, 123 (Pa. 1983). It is undisputed that King was a business invitee at the time of the incident. "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Atkins v. Urban*

---

[3] The District Court had jurisdiction in this matter under 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

*Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 103-04 (Pa. 1980) (quoting

Restatement (Second) of Torts § 343 (1965)).

Against the backdrop of this liability, however, is the rule that "'[a] possessor of

land is not liable to his invitees for physical harm caused to them by any activity or

condition on the land whose danger is known or obvious to them … .'" *Carrender*, 469

A.2d at 123 (quoting Restatement (Second) of Torts § 343 (1965)).  This test is

disjunctive.  "For a danger to be 'known,' it must 'not only be known to exist, but ... also

be recognized that it is dangerous and the probability and gravity of the threatened harm

must be appreciated.'" *Id.* at 124.  "A danger is deemed to be 'obvious' when 'both the

condition and the risk are apparent to and would be recognized by a reasonable man, in

the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Id*.

at 123; *see also Atkins*, 414 A.2d at 104 ("[T]he law of Pennsylvania does not impose

liability if it is reasonable for the possessor to believe that the dangerous condition would

be obvious to and discovered by his invitee.").

Here, King seizes on the District Court's reliance on *Carrender* to draw what he

avers is a critical distinction – that the plaintiff in that case, unlike King himself, had

actual knowledge of the icy conditions at the specific location where she fell.  Because

King did not have knowledge of ice in the exact location where he fell, he argues that he

could not have assumed the risk of a fall and injury.  That position, however, ignores both

the Pennsylvania Supreme Court's jurisprudence regarding what constitutes "knowledge"

and the disjunctive nature of the "known or obvious" test.

In *Atkins v. Urban Redevelopment Authority of Pittsburgh*, a plaintiff, while inspecting a house slated for demolition, fell down a set of stairs due to a missing second stair. 414 A.2d at 102. He testified at trial that he did not know the second stair was missing, yet the Pennsylvania Supreme Court found no duty on the part of the property owner, and thus no liability. *Id.* at 354. It reasoned that, because the inspectors knew the house was slated to be demolished, it was reasonable for the property owner to rely on the inspectors entering the property "to take care in performing required services" and "to discover hazards and to take steps to protect themselves." *Id.* at 353-54.

King's situation is analogous. Having awareness of the general danger – that there was ice and snow throughout the yard, and between some of the trailers specifically – the property owner could reasonably rely on King and the other yard jockeys to act carefully, discover hazards, and take the appropriate steps to protect themselves from the danger inherent in those the conditions. Indeed, King testified that it was part of his responsibility to inspect the yard at the beginning of his shift, and that a procedure was in place whereby he could report ice or other unsafe conditions he discovered and have them rectified. King made no such requests. He said that "it looked like a regular, safe day to do [his] job."[4] (A130.)

In addition to his knowledge of the conditions that day, King testified that he had worked on the premises following snow storms in the past and confirmed that "on most occasions [in the area] between the trailers there would still be snow and ice." (A151.)

_____

[4] If that was his perception, it is remarkable, because a foot of snow is not on the ground on a regular day in Philadelphia.

In fact, King proffered as evidence a video, taken on the premises a few days following the incident, which clearly shows patches of ice and snow remained between the trailers. He confirmed that the conditions in the video were consistent with those the day of the incident.

The Pennsylvania Supreme Court made clear in *Atkins* that highly specific knowledge of the danger faced is not necessary to a finding that a plaintiff has assumed the risk associated with certain working conditions. Nothing in that case suggested that the plaintiff had specific knowledge that the second stair was missing (and therefore dangerous), or even knowledge that dilapidated stairs were a particular risk on the property. Here, King had equal if not greater knowledge regarding the specific risk he faced, as shown by his testimony that he was aware of the presence of ice and snow on the premises, including between the trailers. In light of *Atkins*, that is sufficient to constitute a "known" danger under Pennsylvania law, and it is of no consequence that King did not know there was a patch of ice in the specific location where he slipped.

Even if King's knowledge of the conditions were not sufficiently specific to make the risk "known," the record shows that it was certainly "obvious." King's testimony confirmed that "on most occasions" following snow storms, "between the trailers there would still be snow and ice," (A151) and that "anybody working [on the day of the incident] should have known there was snow and ice between those trailers," (A 147). That testimony, corroborated by his supervisor, and his coworker, leaves no real doubt that "the condition and the risk [were] apparent to and would be recognized by a reasonable man … exercising normal perception, intelligence, and judgment."

7

*Carrender*, 469 A.2d at 124 (internal quotation marks omitted). Faced with such conditions, and the inherent danger of slipping presented by snow and ice, no reasonable man could have failed to recognize the risk presented. The risk of a fall was obvious, and King assumed that risk.

The District Court was thus correct in determining that reasonable minds could not differ in concluding that the danger presented by the snow and ice between trailers was "known or obvious," and the Court properly granted Rocktenn's motion for summary judgment.[5]

## III.   Conclusion

For the forgoing reasons, we will affirm.

---

[5] Because Doris King's loss of consortium claim is predicated on the negligence claim, its dismissal was also proper. *See Craig v. Franklin Mills Assoc., L.P.*, 555 F.Supp2d 547, 555 (E.D.Pa. 2008) *aff'd sub nom.*, 350 Fed. Appx. 714 (3d Cir. 2009) ("If the underlying negligence claim brought by the claimant's spouse is dismissed … the loss of consortium claim must also be dismissed.").