[J-66-2017] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| JOISSE A. CAGEY AND DALE J. CAGEY, HER HUSBAND, | : | No. 36 WAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court entered July 28, |
| | : | 2016 at No. 2650 CD 2015, affirming |
| | : | the Order of the Court of Common |
| v. | : | Pleas of Beaver County entered |
| | : | December 4, 2015 at No. 10716 of |
| | : | 2015. |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| DEPARTMENT OF TRANSPORTATION, | : | ARGUED:  October 17, 2017 |
| A COMMONWEALTH AGENCY, | : | |
| | : | |
| Appellee | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                    **DECIDED:  FEBRUARY 21, 2018**

Like the learned Majority, I believe that the plain language of the real estate exception, Subsection 8522(b)(4) of the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-28 ("the Act"), waives Commonwealth immunity for damages caused by dangerous guardrails affixed to Commonwealth real estate.[1]  I agree as well that *Dean v. Commonwealth, Department of Transportation*, 751 A.2d 1130 (Pa. 2000), does not control the outcome of this case, as *Dean* was predicated upon the absence of a

---

[1]      Subsection 8522(b)(4) of the Act waives Commonwealth immunity for "[a] dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency."  42 Pa.C.S. § 8522(b)(4).

guardrail, rather than the presence of a defective one.  I write separately to suggest that this Court should overrule *Dean*.  Not only does *Dean* conflict with the plain meaning of the real estate exception, it also creates a perverse incentive for the Commonwealth to forego the installation of guardrails entirely, confident that it cannot be held liable for any harm that ensues, rather than install guardrails at considerable cost and expose itself to liability if those guardrails prove uncrashworthy.

To understand *Dean*, we first must examine the case upon which it relied.  In *Snyder v. Harmon*, 562 A.2d 307 (Pa. 1989), plaintiffs climbed a seven-foot high embankment adjacent to the highway in an effort to flee a rogue vehicle.   Unwittingly, they fell into a privately-owned strip mine on the far side.  In the plaintiffs' suit against the Commonwealth, the Commonwealth moved for summary judgment, invoking sovereign immunity under the Act.  The trial court granted the Commonwealth's motion, finding that the plaintiffs had failed to plead sufficient facts showing that the Commonwealth realty—rather than the privately-owned mine—was dangerous.  On appeal, the Commonwealth Court reversed, ruling that the absence of safety features on the Commonwealth realty protecting against the mine's hazards created a genuine issue of material fact as to the dangerousness of the Commonwealth realty sufficient to waive sovereign immunity.

This Court reversed, holding the Commonwealth immune.   This Court acknowledged that the Commonwealth has a duty under Section 8522 to ensure "that the condition of [its] property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used."  *Snyder*, 562 A.2d at 312. However, this Court observed that, in order to satisfy the real estate exception, the

"dangerous condition [at issue] must derive, originate from or have as its source the Commonwealth realty." *Id.* at 311. This Court barred the plaintiffs' claim, because the danger of which they complained (*i.e.*, the privately-owned mine) did not derive from Commonwealth realty. Unlike the Commonwealth Court, this Court held that the absence of safeguards on Commonwealth realty to protect against the mine did not render the Commonwealth's realty dangerous for purposes of the real estate exception. In the *Snyder* Court's view, the absence of the specific safeguards that the plaintiffs alleged should have been installed could not constitute defects of the land itself. *Id.* at 312-13 ("[T]he absence of lighting so as to create a deceptive appearance of the shoulder of the road cannot be said to be either an artificial condition or a defect of the land itself.").

Eleven years later, in *Dean,* two plaintiffs were injured after their vehicle "fishtailed on the snow-covered roadway . . . [,] left the graveled portion of the highway and traveled over a steep, declining embankment where it overturned." *Dean*, 751 A.2d at 1131. The plaintiffs alleged that PennDOT was negligent in failing to install a guardrail to protect against the dangerous embankment. Relying upon *Snyder*'s "absence of lighting" language, this Court held the Commonwealth immune, ruling that "the Commonwealth's failure to erect a guardrail on the highway is not encompassed by the real estate exception. . . [because] the absence of a guardrail cannot be said to be a dangerous condition of the real estate that resulted in a reasonably foreseeable injury." *Id.* at 1134. "[K]eeping in mind that the exceptions to sovereign immunity are to be narrowly construed," and ignoring the fact that the embankment that caused the injury was on Commonwealth realty, the *Dean* Majority reasoned that the Commonwealth

waives immunity only when the *highway itself* is rendered "unsafe for the purposes for which it was intended, *i.e.*, travel on the roadway." *Id.* Thus, although the *Dean* Majority acknowledged that whether a dangerous condition exists is a question of fact for the jury, it held nonetheless that "the allegations in the instant case do not pass the initial threshold necessary under the immunity provisions to raise a question of fact regarding whether a dangerous condition existed." *Id.* at 1135 n.10.

In a concise dissent, Justice Nigro pointed out the obvious inconsistency in the *Dean* Majority's logic: "If, as the majority contends, the absence of a guardrail does not affect the safety of the road for travel, I question why the Commonwealth would ever place a guardrail on a highway in the first place." *Id.* at 1135 (Nigro, J., dissenting). In a separate dissent, Justice Newman argued that the Commonwealth waived immunity when "the condition of government property created a reasonably foreseeable risk of harm that actually happened." *Id.* (Newman, J., dissenting). In Justice Newman's view, because the injury was foreseeable, and was caused by a dangerous condition of Commonwealth real estate (*i.e.*, the declining embankment, the absence of a safeguard, or a combination of the two), the Commonwealth had a duty to install reasonable safety features to protect against that danger. Because the Commonwealth failed to do so, the Commonwealth realty as a whole (including the highway and the surrounding embankment) was rendered dangerous, and the Commonwealth waived immunity, pursuant to the real estate exception.

The holding and reasoning of the *Dean* Majority contradict the plain meaning of the real estate exception, and *Dean* should be overruled. *Dean*'s stark dichotomy between the presence and absence of a guardrail confounds Section 8522's explicit

waiver of immunity "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute." 42 Pa.C.S. § 8522(a). It has long been axiomatic at common law that a possessor of land is subject to liability for harm caused to invitees[2] by a condition on her land if she knows, or has reason to know, of a latent, unreasonable risk of harm that she should expect the guest not to discover or recognize, and if she fails to render that condition reasonably safe. *Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 103 (Pa. 1980) (adopting the Restatement (Second) of Torts § 343).[3] This is particularly so for possessors of land adjacent to a highway. *See* RESTATEMENT (SECOND) OF TORTS § 368 (1965).[4]

---

[2] Although the Cageys characterize themselves as licensees, I agree with the Majority that, pursuant to *Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 103 n.2 (Pa. 1980), the Cageys are better characterized as invitees. *See also* RESTATEMENT (SECOND) OF TORTS § 332 (1965).

[3] Under Section 343 of the Restatement (Second) of Torts, "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." RESTATEMENT (SECOND) OF TORTS § 343 (1965).

[4] A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

      (a) are traveling on the highway, or

      (b) foreseeably deviate from it in the ordinary course of travel.

RESTATEMENT (SECOND) OF TORTS § 368 (1965).

Under the real estate exception, the Commonwealth waives immunity for "a dangerous condition of Commonwealth agency real estate." 42 Pa.C.S. § 8522(b)(4). Neither the Act, nor any reasonable construction of its real estate exception, predicates the waiver of immunity upon whether a dangerous condition is the result of the absence of a safety feature or the presence of a defective one.[5] Nor does the statute concern itself at all with the question of whether the alleged danger complained of impedes travel on the roadway itself, or looms on the adjacent berm. Although "one is admonished to listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L.REV. 527, 536 (1947). Importantly, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Johnson*, 26 A.3d 1078, 1090 (Pa. 2011) (quoting *Commonwealth v. Rieck Inv. Corp.*, 213 A.2d 277, 282 (Pa. 1965)).

In point of fact, the Majority's holding necessarily leaves little, if any, of *Dean*'s reasoning intact.[6] *Dean*'s ruling that the Commonwealth waives immunity only when the highway is "unsafe for the purposes for which it was intended, *i.e.*, travel on the

---

[5]     *See Winegardner v. Springfield Twp.*, 102 A. 134, 135 (Pa. 1917) ("It is the duty of a township to exercise reasonable care to keep its highways in a safe condition for ordinary travel . . . . This duty is not confined to maintaining the bed of the road in a solid and safe condition and clear of obstructions, but extends to the erection of barriers or other devices for guarding unsafe or dangerous places on or along the road. If a public road through a township is so dangerous by reason of its proximity to a precipice that common prudence requires extra precaution, in order to secure safety to travelers, the township is bound to use such precaution, and the omission to do so is negligence.").

[6]     *See generally In re Paulmier*, 937 A.2d 364, 370-71 (Pa. 2007) (opining that overruling precedent is appropriate when two cases are irreconcilable).

roadway," *Dean*, 751 A.2d at 1134, is patently irreconcilable with the Majority's salutary conclusion that "the real estate exception to sovereign immunity . . . applies to dangerous conditions of all Commonwealth real estate, not just dangerous conditions of highways." Maj. Op. at 9-10.[7]

---

[7]     Today's Majority insists on keeping *Dean* alive (albeit on life support) notwithstanding that the Majority itself appears to confirm that its ruling here has hollowed out that precedent by "reject[ing] *Dean's* 'safe for travel on the roadway' rationale entirely . . . ." Maj. Op. at 14 n.6. The Majority maintains this precarious posture on the basis that *Dean's* "safe for travel on the roadway" holding was "not a 'decisional rationale' of significance . . . ." *Id.* Respectfully, I find this view puzzling.

*Dean's* "travel on the roadway" language was patently decisional: it was included within the paragraph announcing the Court's ruling; it was stated within the context of "applying this law to the instant case;" and it was prefaced as a restatement of this Court's position. *See Dean*, 751 A.2d at 1134. Indeed, at the time, Justice Nigro saw that language as decisional, *see Dean*, 751 A.2d at 1135 (Nigro, J., dissenting) ("If, as the majority contends, the absence of a guardrail does not affect the safety of the road for travel, I question why the Commonwealth would ever place a guardrail on a highway in the first place."), as have countless Commonwealth Court panels since. The Majority cannot now transform dispositive and precedential language in *Dean* into material that is not "decisional" simply by declaring that, while it rejects *Dean's* words, it somehow does not reject or overrule *Dean's* conclusion.

The Majority's view notwithstanding, the Cageys have in fact requested that we overrule *Dean*. S*ee* Reply Brief for Cagey at 2-3 ("If it is true that the safe for travel on the roadway language should be considered one of the decisional rationales supporting the holding in *Dean*, it is contrary to the broad scope of the language of the real estate exception, and should be distinguished, clarified or overruled."). I would accept this invitation. Considering the questions that arise in the context of this case, and contemplating the havoc that *Dean* has wrought (and continues to wreak) in our law, as well as the problems it will likely cause and perpetuate if left undisturbed, the validity of *Dean's* rationale is before us today. *See William Penn Sch. Dist. v. Pennsylvania Dep't of Educ.*, 170 A.3d 414, 447 n.49 (Pa. 2017) ("We would encourage the perpetuation of poorly reasoned precedent were we to permit ourselves to revisit the soundness of our case law only when expressly invited to do so based upon a given party's tactical decision of whether to attack adverse case law frontally (always a gamble against long odds) or to attempt more finely to distinguish the adverse decisions. The scope of our review is not so circumscribed.") (citing *Freed v. Geisinger Med. Ctr.*, 5 A.3d 212, 231 (Pa. 2010) (noting that testing the validity of the Superior Court's ruling distinguishing one of our prior cases may entail reviewing the validity of the precedent in question))).

Nevertheless, because the Majority chooses not to overrule *Dean*, an anomaly arises. To preserve *Dean*, and to apply it in tandem with the Majority's holding, creates a perverse incentive for the Commonwealth to forego the installation of guardrails entirely, lest it waive immunity when those guardrails cause injury. Under the Majority's holding, the Commonwealth waives immunity for defective guardrails. Yet, under *Dean*, the Commonwealth is immune if it never installs those guardrails in the first place. Thus, although the Commonwealth may have a statutory[8] and common-law duty to make its highways reasonably safe for the purposes for which they are used, *Dean* tacitly insists that the Commonwealth need not install guardrails at all, even when they are obviously necessary to highway safety. I fear that this Court unwittingly has subordinated the Commonwealth's duty to protect its citizens to *Dean*'s implicit concern for protecting the public fisc.[9] We must presume that the General Assembly did not intend such an absurd or unreasonable result. *See* 1 Pa.C.S. § 1922(1).

For the reasons stated above, I would overrule *Dean*,[10] apply the duty set forth in *Snyder*, and adopt the test outlined by Justice Newman in her *Dean* dissent. Under

---

[8]    *See, e.g.*, 36 P.S. § 670-401 (requiring that the Commonwealth "construct or improve, and thereafter maintain and repair, at the cost and expense of the Commonwealth, the highways forming the plan or system of the State highways, in the several counties and townships"); 36 P.S. § 670-416 (requiring the Commonwealth to construct sidewalks "[w]henever it shall appear that any part or portion of a State highway in any township is dangerous to the traveling public, and such danger could be materially reduced or lessened by the construction of a sidewalk").

[9]    *See Dean*, 751 A.2d at 1134 n.9 ("Following the dissent's position to its logical conclusion would expose the Commonwealth to unlimited liability, a result clearly not intended by the legislature in enacting the sovereign immunity statute.").

[10]    I would also clarify *Snyder* to the extent that its "absence of lighting" language seems to imply that the absence of any and all safety features cannot render Commonwealth realty dangerous. As noted *supra*, under our common law, a plaintiff (continued…)

*Snyder*, the Commonwealth has a duty to ensure that "the condition of [Commonwealth] property is safe for the activities for which it is regularly used, intended to be used[,] or reasonably foreseen to be used." *Snyder*, 562 A.2d at 312. Under the real estate exception, the Commonwealth waives immunity when "the condition of government property created a reasonably foreseeable risk of harm that actually happened." *Dean*, 751 A.2d at 1135 (Newman, J., dissenting). A vehicular accident is a reasonably foreseeable consequence of highway travel. As such, although the Commonwealth is not the guarantor of every passing highway visitor's safety, *see id.* at 1134, n.8, the Commonwealth has a duty to ameliorate latent dangers on the roadway and make the surrounding area that it owns or controls reasonably safe in the event of an accident. If the Commonwealth fails to do so, either by failing to install a guardrail where necessary or by installing a defective one, the Commonwealth has created a reasonably foreseeable risk of harm. When a plaintiff is injured by an unsafe condition on Commonwealth realty, whether the condition is created by omission or commission, under circumstances that would otherwise impose liability on a private landowner, the Commonwealth is exposed to potential liability regardless of whether the danger was associated with the highway itself or with its immediate surroundings. In the instant case, a defective guardrail affixed to Commonwealth realty allegedly injured the Cageys after they veered off the road. Applying the aforementioned test, the Cageys have

---

(…continued)
may pursue a negligence claim against a landowner for failing to make her property reasonably safe, which necessarily includes the installation of reasonable safety features. Likewise, *Dean*'s extension of this rationale to guardrails provides yet another reason to overrule *Dean*.

pleaded sufficient facts to show that the Commonwealth has waived immunity pursuant to the real estate exception.

I hasten to note that this approach would not open the proverbial floodgates to unbounded Commonwealth liability. By no means does the Commonwealth's waiver of immunity guarantee a plaintiff's recovery. While the waiver of immunity exposes the Commonwealth to potential liability, a plaintiff nonetheless must plead and prove a *prima facie* claim of negligence to survive the pleading stage, must then survive dispositive motions, and must then prevail at trial. As with all litigation—against the Commonwealth or a private party—only meritorious claims proceed.[11]

I would overrule *Dean,* and I would adopt the test outlined by Justice Newman in her *Dean* dissent. I concur in the result and the reasoning of the Majority, subject to the limitations expressed herein.

---

[11] In order to survive dispositive motions and prevail at trial, a plaintiff also must plead and prove that the Commonwealth realty at issue was, in fact, dangerous. Plainly, the Commonwealth need not install guardrails on every inch of Commonwealth-maintained highway. As noted by Justice Newman in her *Dean* dissent, the absence of a guardrail could not be considered a dangerous condition of Commonwealth realty when prevailing engineering standards would not mandate their inclusion. *Dean*, 751 A.2d at 1136 (Newman, J., dissenting). Similarly, the absence of a guardrail does not, in and of itself, waive Commonwealth immunity. As noted *supra*, waiver of immunity is inherently limited by traditional negligence principles like reasonableness, foreseeability, and causation.