638 A.2d 247

**John F. O'BRIEN, Jr., and Carol O'Brien, appellants,**

**v.**

**Richard E. MARTIN, A.I.A. & Associates, Logan Square East, Life Care Communities Corp., Daniel J. Keating Corp., Fab III Concrete Corp., and Cornell Iron Co., Inc.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1993.

Filed March 10, 1994.

Jill Fisher, Philadelphia, for appellants.

Amy F. Loperfido, Philadelphia, for Fab III, appellee.

Before BECK, TAMILIA and HESTER, JJ.

BECK, Judge:

This is an appeal from a judgment for plaintiffs-appellants, John F. O'Brien and Carol O'Brien, and against appellee, Cornell Iron Company, Inc., in an action in which appellants sought to recover for injuries sustained by Mr. O'Brien when he fell while performing construction work. Although the O'Briens succeeded in winning a verdict, they now seek a new trial because they contend that numerous trial errors resulted in the jury assessing an unfairly low damage award. We find that under the facts of this case the trial court erred in instructing the jury that Mr. O'Brien was contributorily negligent as a matter of law. Therefore, we reverse and remand for a new trial.

Appellants instituted this action against Richard E. Martin, A.I.A. Associates, Logan Square East, Life Care Communities Corporation, Daniel J. Keating Company, Fab III Concrete Corporation, and Cornell Iron Company, Inc. Mr. O'Brien

(hereinafter "appellant") was employed by the Daniel J. Keating Company as the operator of a freight elevator on a project called Logan Square East (the "project"). Richard E. Martin, A.I.A. and Associates was the architect on the project, Cornell Iron Company, Inc. was a subcontractor responsible for providing and installing a guardrail in the area where Mr. O'Brien fell, and FAB III Concrete Corporation was a subcontractor responsible for placing sleeves in the concrete to allow for installation of the guardrail.

At the time of the accident giving rise to this action, appellant was on the loading dock at the project and was engaged in making arrangements with another tradesman, who was delivering construction materials, regarding loading the materials onto the freight elevator. The supplies were being delivered in a vehicle that was parked in a bay of the loading dock located below where appellant was standing. Because of the noise in the loading dock area, appellant was unable to hear what the tradesman delivering the materials was saying to him. Thus, he attempted to get closer to where the tradesman was standing by walking to the edge of the loading area and then stepping onto a concrete extension or pier, approximately 20 inches wide, that extended off the edge of the dock. Shortly after appellant stepped onto the pier, there was a loud crash in the construction area behind appellant. The noise startled appellant, causing him to lose his balance and fall approximately four feet to a concrete floor below him. He sustained disabling back injuries.

The matter was tried to a jury. Appellant argued that his injuries were caused by the failure of the subcontractors, Cornell and FAB III, properly to design, fabricate and install a guardrail which would have prevented appellant from stepping onto the pier from which he fell. The subcontractors argued that the pier was not intended to be used to stand upon and that appellant was negligent for having done so. They argued that if appellant needed to hear instructions from the other tradesman, he should have proceeded down a ramp located at one end of the loading dock in order to go down to where the tradesman was standing.

Only the names of Cornell, FAB III and Martin were included on the verdict slip. The remaining defendants had been dismissed. Martin, having settled during trial, was submitted to the jury only for purposes of apportionment of liability. The jury returned a verdict in the amount of $214,-000 for appellant John O'Brien. Mrs. O'Brien was awarded nothing on her loss of consortium claim. The jury, having been instructed by the court that appellant John O'Brien was contributorily negligent as a matter of law, allocated 50% causal negligence to him. It allocated 25% to Martin, 25% to Cornell, and 0% to FAB III. After post-trial motions were filed and denied, appellants filed this appeal.[1]

Although appellants raise numerous issues on appeal, we find it necessary to decide only one of them, i.e., that which alleges error in the trial court's decision to instruct the jury that appellant John O'Brien was contributorily negligent as a matter of law. Since we find that this instruction was error, necessitating the retrial of this case, we need not discuss any of the other alleged grounds for a retrial, which may or may not arise when the new trial we order is conducted.

In reviewing an order denying a motion for a new trial, we determine whether the trial court abused its discretion or committed an error of law. Where the trial court's jury instructions are at issue, a new trial is appropriate where the instructions were fundamentally in error and might have been responsible for the verdict. *Hawthorne v. Dravo Corp.*, 352 Pa.Super. 359, 508 A.2d 298 (1986).

The portion of the trial court's charge to the jury that is alleged to have been in error in this case is as follows:

I will instruct you later that there is such a thing in Pennsylvania law of comparable negligence, that is, a person who sues another for injuries sustained by that person, as in this case, may still recover even if he is himself negligent

1. Although no judgment was entered prior to the filing of the notice of appeal, upon subsequent order of this court a judgment was entered on the jury's verdict and we relate this technically premature appeal forward to the date of that judgment. *See* Pa.R.A.P. 905.

provided certain percentages are met, and this will be explained to you shortly.

But based on the evidence that has been heard, the court has already determined that in light of the fact that there is evidence admitted by the plaintiff that there was more than one way to get to where he said he had to be to talk to this person he was talking [to] in the course of his work, that there was at least one way which was safer than the one that he chose, perhaps more than one way which was safer, but at least one way was safer than the way that he chose to go to speak to the man that he was talking to, that being the case, the law says as a matter of law a person who chooses of two ways the one which is more dangerous than the other which is safer as a matter of law is negligent and responsible for his injury.

In so charging the jury, the trial court was relying upon what has variously been described in our case law as the "alternate ways" or "choice of ways" doctrine. This court has described the doctrine as follows:

The so-called "choice of ways" rule is simply stated: "Where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence...."

The rule requiring a person to select a safe route in favor of a dangerous one is nothing more than a formulation of the general rule that a person is contributorily negligent if his conduct falls short of the standard to which a reasonable person should conform in order to protect himself from harm. However, the rule is not meant to impose unreasonable restrictions on travel. .... Thus, to warrant an instruction on "choice of ways", there must be evidence that the plaintiff made an unreasonable decision which exposed him to a hazard that he knew or should have known existed. There must be evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger.

328

*Downing v. Shaffer,* 246 Pa.Super. 512, 371 A.2d 953, 956 (1977) (citations omitted).

So described, the alternate ways doctrine appears straightforward. However, in applying this general principle to the present case, we must bear in mind several other related principles—some general and some specific. First, it is well-known that contributory negligence, or in present parlance, comparative negligence, may not be found by the court as a matter of law unless the facts so clearly reveal the plaintiff's negligence that reasonable minds could not disagree as to its existence. *See, e.g., Gregorius v. Safeway Steel Scaffolds Co.,* 409 Pa. 578, 582, 187 A.2d 646 (1963); *Skalos v. Higgins,* 303 Pa.Super. 107, 449 A.2d 601, 604 (1982).

Second, in assessing the negligence of a workman's conduct on the job, the Supreme Court has specifically enunciated two refinements of the alternate ways doctrine. First, "[in determining the standard of conduct of one who is injured in the performance of his employment, the working conditions and all of the circumstances incident thereto, including his obligation to do his job, must be considered." *Gregorius,* 409 Pa. at 584, 187 A.2d at 649; *Binder v. Jones & Laughlin Steel Corp.,* 360 Pa.Super. 390, 520 A.2d 863, 868 (1987). Second, "[w]hen a workman in the discharge of his duties proceeds from a place where it is necessary for him to be to another place where it is necessary for him to go, the law will not proclaim him guilty of contributory negligence if he moves over a route unknown to him, in the exercise of his normal faculties, to be dangerous." *Cooper v. Heintz Mfg. Co.,* 385 Pa. 296, 307, 122 A.2d 699 (1956). *See also Quinn v. Kumar,* 437 Pa. 268, 263 A.2d 458 (1970).

Finally, we note that Pennsylvania courts have generally been loath to apply the alternate ways doctrine. As a panel of this court indicated in *Oswald v. Stewart,* 301 Pa.Super. 463, 448 A.2d 1, 2 (1982), in those very few cases where the doctrine has been applied to find that the plaintiff was contributorily negligent, the danger the plaintiff chose to confront was indisputably obvious. For example, in *DeFonde v. Keystone Valley Coal Co.,* 386 Pa. 433, 126 A.2d 439 (1956), the

plaintiff's decedent, a workman, could have walked along a completely safe route at the worksite to get back to his truck, but he chose instead to attempt to dart between a bulldozer and a mechanical shovel machine as they were being started. He was crushed between the two machines. Since it was common knowledge, particularly to workers at the site, that the shovel machine would recoil toward the bulldozer when it was started, the court found the decedent had confronted a danger that was obvious to him instead of taking another clearly safe course. *Id.* at 436–37, 126 A.2d at 440.

The more common case is that like *Quinn v. Kumar, supra,* where the court held that it was for the jury to decide whether the alternate ways doctrine should be applied to find a workman guilty of contributory negligence. The workman in *Quinn* was injured when he took the most expeditious and convenient path to go where he needed to go at the construction site where he worked, even though the route chosen was not the safest one available since it involved walking under a sagging roof structure on which were piled heavy materials. Despite the obviousness of this possible danger, the court still found the contributory negligence of the workman to be a jury question. *See also Mattox v. City of Philadelphia,* 308 Pa.Super. 111, 454 A.2d 46, 49–51 (1982).

We find no analogy between the facts of this case and the facts of those cases, like *DeFonde,* where it has correctly been held that the plaintiff chose an obviously dangerous way over a clearly safe one. Here, although appellant could have gone to speak to the other tradesman by proceeding across the loading dock and going down the ramp to the floor below, appellant testified that he did not think standing on the cement pier was dangerous, as long as one was careful when doing so. Appellant stated that he did not think standing on the pier was a safety hazard "because it was commonplace," and he pointed out that construction workers like himself were expected to be able to perform their work under circumstances different from those confronted in other types of work. Moreover, appellant testified that he had seen other workers safely walk on the pier after climbing up to it by means of narrow planks that had been placed between the pier and the

loading bay floor below it. Finally, he testified that he had understood that there were plans for a ladder to be built from the floor up to the pier, thus specifically enabling people to get up to the pier, and that this led him to believe that it was not dangerous to be on the pier.

This is not a situation where the facts so clearly bespeak negligence by the plaintiff that the issue should have been removed from the jury. The danger ultimately confronted by appellant, i.e. that of falling off the pier, was not so patently obvious that the jury should have been instructed that appellant was negligent as a matter of law for briefly standing on the pier instead of proceeding the longer way around and going down the ramp to be able to talk to the other tradesman. The jury should have been permitted to decide whether appellant's decision to stand on the pier for a short time to make arrangements necessary for the performance of his job was negligent.

We reverse the judgment of the trial court and remand for a new trial. Jurisdiction is relinquished.