Neil **FERBER** and Annette Ferber, h/w, Appellants,

v.

**CITY OF PHILADELPHIA** and Sergeant Daniel Rosenstein and Officer Dominic Frontino and Detective Michael Bittenbender and Detective Oscar Jones and Detective Frank Diegel and Detective Philip Checchia.

Neil **FERBER** and Annette Ferber,

v.

**CITY OF PHILADELPHIA** and Sergeant Daniel Rosenstein, Badge No. 370 and Officer Dominic Frontino, Badge No. 6979 et al.

City of Philadelphia, Daniel Rosenstein, Dominic Frontino, Michael Bittenbender, Oscar Jones, and Frank Diegel, Appellants.

Neil **FERBER** and Annette Ferber,

v.

**CITY OF PHILADELPHIA** and Sergeant Daniel Rosenstein, Badge No. 370 and Officer Dominic Frontino, Badge No. 6979 et al.

City of Philadelphia, Daniel Rosenstein, Dominic Frontino, Michael Bittenbender, Oscar Jones, and Frank Diegel, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 9, 1995.

Decided June 29, 1995.

Reargument Denied Aug. 11, 1995.

Dennis J. Cogan and Gerald A. McHugh, Jr., for appellants/appellees, Neil Ferber and Annette Ferber.

Michael F. Eichert, Chief Deputy City Sol., for appellees/appellants City of Philadelphia, et al.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

"Factually, this case presents a Kafkaesque nightmare of the sort which we normally would characterize as being representative of the so-called justice system of a totalitarian state. Unfortunately, and shamefully, as the trial evidence showed, it happened here in Philadelphia."

That is how Judge John W. Herron of the Court of Common Pleas of Philadelphia County (trial court), in a well-reasoned and thorough opinion, described the wrongful conviction of Neil Ferber (Ferber) on two counts of murder in the first degree and his sentencing to death as a result. Nonetheless, even though a jury awarded Ferber and his wife $2 million in compensatory damages and $2.5 million in punitive damages, due to a subsequent change in the law regarding the availability of governmental immunity to the defendants, on post-trial motions the trial court felt compelled to dismiss the City of Philadelphia (City) from the case and or-

dered a new trial on damages as to the other defendants.[1]

Ferber appeals the grant of those post-trial motions. The City also appeals contending that there should be a new trial as to liability as well and that the trial court impermissibly ordered a new trial as to some individual police officer defendants who were previously dismissed.

Judge Herron's opinion sets forth in detail and with clarity the factual and procedural history. We will not reiterate those facts but will summarize and only highlight those necessary for our disposition of this appeal. Alleging malicious prosecution, civil conspiracy, abuse of process, intentional infliction of emotional distress and loss of consortium, and seeking compensatory as well as punitive damages for the three and a half years he spent on death row until his conviction was reversed and the charges were dismissed, Ferber in 1986 brought an action against the City, Officer Daniel Rosenstein, Officer Dominic Frontino, Officer Michael Bittenbender, Officer Oscar Jones, Officer Frank Diegel, and Officer Philip Checchia[2]. The complaint stated that the police officers, as employees of the City, were acting within the scope of their authority and within the course of their employment. (Reproduced Record 7a–9a). The complaint also alleged that the police officers acted intentionally and maliciously. (R.R. 9a).

The actions complained of began after Steven Bouras and Jeannette Curro were murdered in May of 1981. Bouras was a reputed leader of local organized crime and Curro was one of his dinner companions when they were shot by two masked gunmen in a restaurant. Stating the evidence in the light most favorable to Ferber, the verdict winner, the relevant actions of Rosenstein, Frontino and other City police officers include:

- fabricating a tip from an informant, whose alleged identity was never re-

---

1. All the defendants in the trial court will, at times, be referred to as the City because they presented a combined defense and shared counsel in the trial court and on appeal.

2. At the close of Ferber's case, a nonsuit was granted in favor of Checchia and he is not involved in this appeal.

vealed,[3] in order to focus the investigation on Ferber;

- manipulating witnesses to produce a sketch that was almost identical to a mug shot taken of Ferber;

- manipulating witnesses to get a suspect identification by telling them they had other evidence of Ferber's guilt and making disparaging remarks about him;

- misrepresenting a witness' statement as "positive identification";

- suborning perjury about a confession from a prisoner by offering favorable treatment of pending charges and allowing him to visit his girlfriend; and,

- misrepresenting the polygraph test taken by the prisoner in order to admit his testimony about a confession in the criminal trial.

The facts led to a conclusion by the jury that the police officers conspired to convict Ferber by misusing their positions as police officers.

At the time of the criminal trial, the City, pursuant to Section 21–701 of the Philadelphia Code,[4] waived the defense of governmental immunity for either unlawful or negligent conduct of police officers acting within the scope of their duties. Section 21–701 of the Philadelphia Code was enacted before the passage of what is popularly known as the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564, in 1978, giving local governmental units immunity from such conduct. In 1990, the City repealed Section 21–701 and attempted to apply the repealer retroactively. Rejecting those arguments, this court held that the repealer did not apply retroactively to causes of action arising when the waiver section was in effect. *See, e.g., Agresta v. Gillespie,* 158 Pa.Commonwealth Ct. 230, 631 A.2d 772 (1993) (pre-*Gray* law). At the time of the jury trial in 1993,

the City was precluded by pre-*Gray* law from invoking its immunity which led to its being obligated to indemnify the police officers if they were found to be liable to Ferber.

In reliance on this state of the law, in the charge to the jury, the trial court stated:

In this case it is admitted by the City of Philadelphia that the individual defendants and other unnamed police officers in this case were at the time of the investigation, arrest and prosecution of Mr. Ferber acting as employees of the City of Philadelphia and were engaged in furthering the interests, activities, affairs and business of the City of Philadelphia. Therefore, if you find any of the individual defendants or any other unnamed city police officer or officers to be liable for one or more of the alleged causes of action, then you must find the City of Philadelphia also liable for these claims.

(R.R. 160a).

The trial court and parties discussed the manner in which the verdict sheet should be presented in relation to the City's liability under respondeat superior and the City's concern that it not be listed as a separate defendant on each count of the verdict sheet, which could result in double recovery. In response, the City was not listed as a separate defendant on the verdict sheet. Then the trial court suggested a statement on respondent superior be added. The City's attorney stated that he had not agreed to such a statement and that "I don't think there should be anything." (R.R. 180a). Ferber's attorney suggested language for such a statement. The trial court asked the City's attorney if, as a proposition of law, Ferber's suggested language was correct and the City's attorney stated that it was. (R.R. 181a). The trial court proceeded to place at the top of the verdict sheet the statement that:

The City shall not plead governmental immunity as a defense in any civil action commenced by a person sustaining bodily injury or death caused by negligence or unlawful conduct of any police officer while the latter is acting within the scope of his office or employment. This section was repealed on December 4, 1990, Bill No. 1057, Section 1.

---

**3.** Rosenstein initially refused to reveal the identity of the informant. On the eve of the trial, under court order to disclose the information for the purposes of an in camera hearing, Rosenstein claimed that he could no longer remember the informant's identity and that his file containing such information had been stolen from his office.

**4.** Section 21–701(a) of the Philadelphia Code provided:

As to Questions 1 to 14: The City of Philadelphia is a named defendant in this case, and is legally responsible for any damage award you may return against any of the parties listed below, because each was a city employee acting within the scope of his or her employment.

(R.R. 187a).

On September 28, 1993, the jury rendered a verdict in the aggregate amount of $4.5 million, with $2.5 million of that amount designated for punitive damages.

While post-trial motions were pending, on November 3, 1993, the Supreme Court reversed this court's decision [5] in *City of Philadelphia Police Department v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993), holding Section 21–701 of the Philadelphia Code was inconsistent with the Political Subdivision Tort Claims Act and became invalid when that Act was enacted. The Supreme Court also held in *Gray* that governmental immunity is an absolute defense which cannot be waived or avoided and can be applied retroactively to all cases, even those on appeal. *See also In re Upset Sale of Properties (Skibo Property)*, 522 Pa. 230, 560 A.2d 1388 (1989).

Based on *Gray*, the City requested a new trial contending that the change in the law compelled a finding that it is immune from suit. Moreover, because it also contends that the amount of damages against the City and the police officers was impermissibly prejudiced by the oral charge to the jury and the verdict sheet naming the City as a defendant and liable for any damages, it requested a new trial. The City also moved for judgment *non obstante veredicto* because there was no conduct constituting a cause of action underlying the civil conspiracy theory.[6]

After oral arguments on the City's post-trial motions, the trial court dismissed the City as a party. It affirmed the individual verdicts against Rosenstein and Frontino but held that a new trial on damages was required against those individual police officers. It did so because "[t]he very notion that the

City could be sued [by waiving immunity], and the catalyst for the content of the Verdict Sheet which is now so controversial, was a fundamental precept of law ..." that pervaded both its rulings and the City's trial of the case. Further reworking the verdict to take into consideration the availability of governmental immunity to the City, the trial court "judicially determined" that Rosenstein and Frontino engaged in illegal conduct causing Ferber's wrongful conviction, and as such, under the resurrected governmental tort immunity, the City cannot be held accountable for the criminal conduct of the individual police officers. 42 Pa.C.S. § 8550. The trial court held the City's tactical decisions at the time of trial, based on erroneous case law, cannot be deemed to waive its immunity.

The trial court also held because the verdict sheet did not specifically name defendants Bittenbender, Jones and Diegel, that a new trial is necessary to determine whether those defendants are liable and whether their actions constituted willful misconduct or criminal behavior. The trial court vacated that part of the damages entered for civil conspiracy because there is no civil cause of action for official oppression as the underlying act of the conspiracy. Thereafter the trial court certified his order and appeals by both Ferber and the City followed.

Numerous issues are raised by the parties in their cross-appeals. Ferber contends:

● the City's agreement that the individual defendants were at all times relevant acting within their scope of employment strips it of its claim to immunity for the willful misconduct of the individual police officers.

● the trial court erred in ordering a new trial on damages for the individual defendants Rosenstein and Frontino;

● even if the compensatory damage award against Rosenstein and Frontino was properly vacated, the award for punitive damages should not be affected;

---

5. *City of Philadelphia Police Department v. Gray*, 133 Pa.Commonwealth Ct. 396, 576 A.2d 411 (1990).

6. The City also requested judgment n.o.v. arguing there was insufficient trial evidence to sustain the verdict which the trial court denied. The denial of that post-trial motion was not appealed.

• the trial court erred in entering judgment n.o.v. on the civil conspiracy count for official oppression; and

The City contends on cross-appeal:

• the trial court erred in granting a new trial against Bittenbender, Jones and Diegel because they were granted nonsuit at trial and Ferber did not file a post-trial motion to set aside that nonsuit; and

• the trial court erred in granting a new trial for Rosenstein and Frontino on damages only and should have granted a new trial as to liability as well.

## I.

■ Ferber argues that the City should not have been dismissed because the Political Subdivision Tort Claims Act "seems to suggest that under certain circumstances the local agency itself can be liable for the willful misconduct of its employees." (Appellant's brief p. 49). Ferber relies on 42 Pa.C.S. § 8550 for that proposition. It provides:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

Because 42 Pa.C.S. § 8550 begins with the words "[i]n any action against a local agency or employee", Ferber argues that language

implies there are circumstances where the local agency can still be liable for acts of willful misconduct or crimes by employees and that those circumstances exist here. Because the City admitted that the police officers were acting within the scope of their employment with the City, Ferber's argument is that their actions were done at the behest of the City, even though the actions were criminal in nature, and subject liability on the City. (Appellant's brief, p. 49). That is a complete misreading of the statutory provision.

Initially, we should point out that Section 8542 of the Judicial Code, 42 Pa.C.S. § 8542, waives immunity for the negligent actions of employees "acting within the scope of his office or duties" where the actions fit within one of the exceptions, also expressly excludes conduct constituting a crime, actual fraud, actual malice or willful misconduct.[7] Moreover, the exclusion is stated in 42 Pa.C.S. § 8550, *supra*, the provision Ferber specifically relies on. These sections make it clear an employee can be acting within the scope of his employment, but when his or her actions are willful misconduct or criminal, the defenses do not apply and the local agency is not required to indemnify the employee.[8] *See Petula v. Mellody*, 158 Pa.Commonwealth Ct. 212, 631 A.2d 762 (1993); *City of Philadelphia v. Brown*, 152 Pa.Commonwealth Ct. 343, 618 A.2d 1236 (1992); *City of Philadelphia v. Glim*, 149 Pa.Commonwealth Ct. 491, 613 A.2d 613 (1992).

In this case, Rosenstein and Frontino committed the act of malicious prosecution, abuse of process and the intentional infliction of emotional distress as well as conspiracy to

---

7. 42 Pa.C.S. § 8542(a) provides:

A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied
. . .:

 (2) The injury was caused by the negligence of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

8. 42 Pa.C.S. § 8548(a) provides for indemnity by the local agency:

When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and he has given timely prior written notice to the local agency, and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment on the suit.

commit the criminal act of official oppression in which an element of the crime is knowledge that one's acts are illegal.[9] Moreover, the trial court made a "judicial determination" that the police officer's numerous acts were criminal in nature.[10] This determination was not appealed by any of the parties and because it has been judicially determined that the employees' acts were criminal in nature, under 42 Pa.C.S. § 8550 the City has no liability for those acts. Because the City's governmental immunity is nonwaivable, *Gray, Skibo,* the trial court did not err in dismissing the City as a party.

## II.

▇▇ Even if the judgment in favor of the City was proper on immunity grounds, Ferber contends that judgment did not necessitate a new trial on damages for the individual defendants, Rosenstein and Frontino, because there was no error in the jury instructions as to them. On the same note, Ferber also argues that any new trial on damages should only be granted as to compensatory and not as to punitive damages. The City, adversely, argues that a new trial should have been granted as to liability as well as to damages.[11]

**9.** Official oppression is defined by the Crimes Code at 18 Pa.C.S. § 5301 as follows:

> A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if knowing his conduct is illegal, he:
>> (1) subjects another to arrest, detention, search, seizure, mistreatment, [or] dispossession ...; or
>> (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

**10.** This case is distinguishable from *Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994), wherein the Supreme Court held that a jury finding a police officer liable in a civil action for assault and battery and for false imprisonment was not a judicial determination of willful misconduct. Because Renk was a police officer, the Supreme Court held that in order to deny indemnification under 42 Pa.C.S. § 8550, there must be a judicial determination that not only he intended to use force but that he intended to use excessive force and that not only did he lack probable cause for the arrest but that he inten-

## A.

▇▇ Whether a new trial is necessary as to damages is controlled by whether the City and the trial court's reliance on the existing case law on the unavailability of tort immunity was so pervasive in how the jury was charged and the verdict sheet that it makes a new trial on damages necessary. The trial court found:

—First, the City can never waive the defense of governmental immunity.

—Second, the information regarding the indemnification promise was highly prejudicial and irrelevant, no matter how factually true it might have been. In the ordinary case, it never would have been allowed to be brought to the attention of the jurors. In this case, "but for" the perfectly reasonable and justifiable reliance on the state of the law at the time of trial, the information never would have found its way into the record.

—Third, solely because the City, the Court and even plaintiffs themselves believed that municipal ordinance 21–701 presented a valid basis for the action against the City, a predicament arose whereby the potential for a double-recovery existed unless the City was deleted from the Verdict

tionally arrested the person knowing that he lacked probable cause, in effect raising the requirement to "willful misconduct aforethought". *See Kuzel v. Township of North Huntingdon,* —— Pa.Commonwealth Ct. ——, 658 A.2d 856 (1995). In this case, however, the jury specifically determined that Rosenstein and Frontino committed the crime of official oppression, which requires knowledge that the conduct is illegal, and conspired to commit official oppression. Thereafter, the trial court judicially determined that the police officers' actions, e.g., in suborning perjury and fabricating evidence, were willful misconduct and criminal.

**11.** Our scope of review of a trial court's grant of a new trial generally is whether the trial court palpably and clearly abused its discretion or committed an error of law which controlled the outcome of the case. *Larch v. Haverford State Hospital,* 152 Pa.Commonwealth Ct. 459, 620 A.2d 37 (1993). An erroneous jury instruction will provide the basis for a new trial if the instruction is fundamentally in error and it may have been responsible for the verdict. *O'Brien v. Martin,* 432 Pa.Superior Ct. 323, 638 A.2d 247 (1994).

Sheet as a separate "line item" against which a damage award could be entered. —Fourth, once it was clear that the Court had adopted the respondeat superior notion of responsibility attaching to the City, defense trial counsel did what was under those circumstances proper and reasonable for an advocate to do in order to avoid additional prejudice: he pressed for the Court to delete the City as a party against whom a damage award could be entered thereby avoiding a double-recovery.

(Trial court opinion on motion for reconsideration, slip op. at 3–4) (footnote omitted).

We agree with the trial court that the City's and its actions were controlled by the reliance on pre-*Gray* case law that immunity was not available. Because this reliance was pervasive, a new trial is necessary if the now erroneous jury charge and verdict sheet were prejudicial. *O'Brien.* A new trial would be warranted even if the extent to which the individual defendants, Rosenstein and Frontino, have been prejudiced is unascertainable. *Sweitzer v. Dempster Systems,* 372 Pa.Superior Ct. 449, 539 A.2d 880 (1988). We agree with the trial court that the standard was met. The City would not have agreed to the jury instruction and the trial court would not have set forth on the verdict sheet the City's indemnification of the police officers if *Gray* had been decided. As the trial court stated, it prejudices the jury because it indicates that another source of payment exists for the individual police officers.

Notwithstanding the foregoing, Ferber argues that where there is error as to one co-defendant, the City, the verdict as to the other defendants, Rosenstein and Frontino, should stand. *See Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1 (1986). While we would ordinarily agree with that proposition, where a respondeat superior theory for recovery is presented and there is one defense offered and one attorney representing both the City and the individual defendants because of reliance on pre-*Gray* law, the jury understandably could have viewed the City and the individuals as one. Less has been held to be prejudicial. In *Lee v. Pittsburgh Corning Corp.,* 420 Pa.Superior Ct. 423, 616 A.2d 1045 (1992), where the jury was erroneously instructed that it could apportion the damages for the proportionate harm caused by cigarette smoking and asbestos exposure, a new trial was required because the verdict was prejudiced by the jury's belief that both parties could be liable for the harm to the plaintiff. Like *Lee,* the information submitted to the jury that the City would be responsible for any damage award may have acted to prejudice the City and the police officers. Because the City never can waive immunity and the effect of pre-*Gray* law concerning the lack of tort immunity was so pervasive, the trial court properly found a new trial on damages was necessary.

**B.**

Ferber contends that even if the jury charge and verdict sheet were prejudicial as to compensatory damages, a new trial should not be granted as to punitive damages as well. If anything, the charge to the jury as a whole was even more prejudicial in the jury's consideration of punitive damages because the jury had the mistaken impression that more than one defendant or more than one source was available to pay the damages awarded. Because the jury was instructed that it could consider the wealth of the defendants in fixing an amount to punish and deter them, (R.R. 170a), it is not difficult to see that the belief that there is a wealthy source for payment of damages may affect the amount of punitive damages as well as compensatory damages. Although the jury instruction was proper, *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989), Section 908 of the Restatement (Second) of Torts, because the jury was erroneously led to believe the City was another, wealthier, source of payment for damages, the trial court did not abuse its discretion in granting a new trial as to all damages.

**C.**

 As to the City's argument that the new trial should have been granted as to liability as well as to damages, a new trial may be limited to the issue of damages where: (1) the issue is not "intertwined" with the issue of liability, and (2) the issue of

liability has been fairly determined or is free from doubt. *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1 (1994). The City asserts that the issues of liability and damages are intertwined because of the intentional nature of the torts involved. Although the determination that intentional torts were committed is relevant to the assessment and amount of punitive damages, this in itself does not make the two issues intertwined. The police officers had a full and fair opportunity to litigate the issue of their liability and the jury clearly decided that either both Rosenstein and Frontino or Rosenstein alone [12] were liable as to each count of the complaint.

Accordingly, we affirm that part of the trial court's order granting a new trial on damages for police officers Rosenstein and Frontino.

### III.

Ferber also contends that the trial court erred in granting judgment n.o.v. on the count of civil conspiracy based on the alleged conspiracy to commit the crime of "official oppression". (Count Four of the Complaint, R.R. 21a–22a). The trial court held on post-trial motions that judgment n.o.v. was necessary on that count because there was no civil cause of action for the particular act of official oppression so there could be no cause of action for civil conspiracy to commit that act, citing *Pelagatti v. Cohen*, 370 Pa.Superior Ct. 422, 536 A.2d 1337 (1987), *petition for allowance of appeal denied*, 519 Pa 667, 548 A.2d 256 (1988). The trial court also stated, however, that the City and the police officers were raising this issue for the first time on post-trial motions and they had not objected to the jury charge on the crime of official oppression or to the statement on the verdict sheet relating to the matter. (Slip op. at 28). Because we determined in Part I. that the City was immune under 42 Pa.C.S. § 8550

and was properly dismissed as a party, the City as a party is not affected by our decision on this issue.

■■■ The Rules of Civil Procedure provide that to be raised in post-trial motions, an issue must have been raised in pre-trial proceedings or through the appropriate method during trial. Pa.R.C.P. No. 227.1(b).[13] A matter not raised in the trial court will not be considered on appeal. *Taylor v. Celotex Corporation*, 393 Pa.Superior Ct. 566, 574 A.2d 1084 (1990). To preserve an issue, a party must make a timely objection at the appropriate stage of the proceedings before the trial court *and* must specifically raise the issue in post-trial motions. *Moore v. Moore*, 535 Pa. 18, 634 A.2d 163 (1993); *Taylor*. The purpose of this rule is to afford the trial court the opportunity to correct an error at the time it is made, and to inform the court of the issues which must be decided at the post-trial stage. *Taylor*.

■■■ As the trial court pointed out, the count of civil conspiracy in Ferber's complaint relied solely on the underlying crime of official oppression. The police officers did not raise the issue in pre-trial motions or during the course of the trial when evidence was presented to support the conspiracy count. Moreover, jury instructions were given on the crime of official oppression in both the oral jury charge and the verdict sheet and no objection was raised. Because the police officers had ample opportunity to raise this issue and did not object during the proceedings until post-trial motions, they waived their objection. That part of the trial court's order entering judgment n.o.v. on the count of civil conspiracy is reversed.

### IV.

■■■ The final issue is the City's contention on cross-appeal that the trial court erred

---

12. The jury found that Frontino was not liable under the count for intentional infliction of emotional distress.

13. Pa.R.C.P. No. 227.1(b) provides:
 Post-trial relief may not be granted unless the grounds therefor,
 (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for

charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
 (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

in granting a new trial against Bittenbender, Jones and Diegel because they were granted nonsuit at trial and Ferber did not file a post-trial motion to set aside that nonsuit. The record reveals that during the trial, counsel for the City presented a motion for directed verdict or nonsuit with regard to the individual defendants Bittenbender, Jones and Diegel. Ferber did not object and the trial court granted the motion. (Original Record, Notes of Testimony, p. 722). After granting the motion for nonsuit as to these defendants and without Ferber raising any error in post-trial motions as to the grant of nonsuit, the trial court erred in *sua sponte* attempting to bring them back into the case and ordering a new trial on their liability.

Accordingly, the trial court's order is affirmed insofar as it dismissed the City as a party, makes a judicial determination of criminal behavior and willful misconduct, affirms the verdict of liability entered against Rosenstein and Frontino and grants a new trial as to damages for Rosenstein and Frontino. But the order is reversed insofar as it enters judgment n.o.v. on the count of conspiracy to commit official oppression in favor of the police officers and insofar as it grants a new trial as to police officers Bittenbender, Jones and Diegel.

### ORDER

AND NOW, this 29th day of June, 1995, the order of the Court of Common Pleas of Philadelphia County, dated October 28, 1994, No. 4696 July Term, is affirmed in part and reversed in part. It is affirmed insofar as it dismisses the City of Philadelphia as a party and grants a new trial on damages to Sergeant Daniel Rosenstein and Dominic Frontino. It is reversed insofar as it enters judgment n.o.v. on the count of conspiracy to commit official oppression in favor of the individual police officers, and grants a new trial on liability and damages as to Michael Bittenbender, Oscar Jones and Frank Diegel.