**Beizer v. Graduate Hospital Inc.**

*Arnold H. Winicov,* for plaintiffs.
*Anthony E. Creato,* for defendant Graduate Hospital.
*John P. Penders,* for defendant Stanley Magic Door.

HILL, *J.,* October 10, 1996—

Plaintiff, Lawrence H. Beizer M.D., and Lillian Beizer, his wife, brought this negligence action for personal injuries suffered by Dr. Beizer in a fall. This occurred on August 25, 1992, when Dr. Beizer, an 83-year-old physician fell over a long, low cardboard box which was lying across a concrete walkway in a large courtyard in the central part of the Graduate Hospital Complex in Philadelphia. Following a two-day non-jury trial, the court found in favor of Dr. Beizer and against defendant, Stanley Magic Door Inc., in the amount of $400,000 less 50 percent comparative negligence for a net award of $200,000. A directed verdict was granted in favor of defendant, Graduate Hospital, because there was no evidence that Graduate, as the owner of the premises, had notice of the box. Thereafter the court awarded Mrs. Beizer $15,000 for loss of consortium (reduced from $30,000 because of Dr. Beizer's comparative negligence). Defendant, Stanley, filed post-trial motions for a judgment n.o.v., and/or for new trial.

## II. FACTS AS FOUND BY THE COURT

On August 25, 1992, Dr. Beizer, who treated patients at Graduate Hospital and whose office was in a nearby building, had an appointment to meet colleagues in the parking lot of the hospital at 1 p.m. for the purpose of attending a funeral. (T. 3/18/96, 26, 173). Plaintiff left his office (the Tuttleman Building) on South Street (T. 3/18/96, 102, 103), crossed South Street and entered the hospital at its South Street entrance. Plaintiff went through the lobby and left the hospital through a doorway which opened onto a concrete walkway leading through a courtyard. The walkway ended at a gateway on 19th Street which was across 19th Street from the

parking lot. (T. 3/18/96, 104.) It was a sunny day. (T. 3/18/96, 166.)

Defendant, Stanley, an independent contractor, had been hired by Graduate to replace the sliding doors at the doorway through which the plaintiff went in order to reach the concrete walkway leading to the hospital's 19th Street gateway. (T. 3/18/96, 106.) The two Stanley employees removed a new header for emplacement over the doorway from an 8.5 foot long cardboard box measuring 10.5 inches wide and 6 inches on its edge. (T. 3/18/96, 118.) The workmen placed the empty box completely across the walkway.[1] One of the Stanley employees wrote "Do Not Enter" on one of the 10.5 inch sides of the box. The side of this box with this writing was faced towards the 19th Street gateway (T. 3/18/96, 110) and not in the direction of the doorway which plaintiff went through. There was no warning on the other side of the box which faced the doorway. (T. 3/18/96, 104, 105.)

As plaintiff approached the doorway he noticed the workers in the area, however it was not until he had proceeded through the doorway that he first noticed the box approximately 10 feet from him. (T. 3/18/96, 114, 155.) Although Dr. Beizer initially testified that the position of the box was flat (T. 3/18/96, 109), the court found that it rested on its 6.5 inch edge and not on the wider side. Despite his awareness of the box obstructing his path, plaintiff proceeded towards the 19th Street gateway as he was pressed for time and was unsure whether the other entrances were similarly blocked. (T. 3/18/96, 106, 158-60, 166.) Plaintiff testified that he did not consider the box to be a dangerous condition. (T. 3/18/96, 114.) In attempting to step over

---

1. Stipulated between the parties.

the box, plaintiff tripped or lost his balance and struck his forehead on the concrete sidewalk. (T. 3/18/96, 117-50, 161, 162.)

Plaintiff was thereafter wheeled to x-ray where x-rays were taken of his face and neck. (T. 3/18/96, 121.) Also a laceration in his eyebrow received stitches and a splint was placed on his fingers. As Dr. Beizer was being taken to x-ray he had a full look at the box and saw "Do Not Enter" written so that it could only be read from the 19th Street side. (T. 3/18/96, 116.) Plaintiff returned to work for the next two days but experienced considerable pain requiring medication. (T. 3/18/96, 123.) The following Saturday, plaintiff saw Dr. Glazier, an orthopedic surgeon, who took additional neck x-rays (T. 3/18/96, 126) which revealed a fracture of the second cervicle vertebra and the displacement of the first cervicle vertebra. (T. 3/18/96, 127.) A laminectomy, a bone graft, and wiring of the transverse processes to prevent movement of the vertebra were undertaken. (T. 3/18/96, 131.) A "halo" was screwed into plaintiff's head to prevent movement and remained in place for 75 days. Plaintiff was unable to eat normally and was confined to bed; it was not until September 23, 1992, that plaintiff could walk the length of the hospital hall. (T. 3/18/96, 131, 133.)

During this period plaintiff could not bend over and was unable to bathe, dress and otherwise care for himself. Lillian Beizer gave plaintiff bed baths and dressed him. Prolonged use of the halo made plaintiff more vulnerable to accidents, and on November 17, Dr. Beizer fell and severely fractured his pelvis and several ribs. (T. 3/18/96, 148.) X-rays revealed that plaintiff suffered from spondylolisthesis which required the use of a brace for two days. (T. 3/18/96, 148.)

Prior to the accident, Dr. Beizer had not intended to retire from practice for at least three years. (T. 3/18/96,

142.) At the suggestion of his partner and after careful consideration, based on his lack of mobility and independence, Dr. Beizer decided to retire. (T. 3/18/96, 142.) Today, Dr. Beizer still lacks mobility, is unable to drive and cannot cross the street without assistance. (T. 3/18/96, 150.)

Prior to the accident, Dr. Beizer was independent and self-sufficient. During the 75-day period during which plaintiff wore the halo, he required round-the-clock nursing care. (N.T. 3/18/96, p. 192.) As a result of the accident, Dr. and Mrs. Beizer's relationship went from a normal, caring relationship to one of total dependence requiring Lillian Beizer to assist her husband in everyday activities which he can no longer accomplish by himself.

The court personally inspected the site of the fall at Graduate Hospital. Based on the evidence the court finds that it would have been foreseeable to reasonable, prudent persons placed in the position of defendant Stanley's employees that the box, whether on its 10.5 inch side or 6 inch edge, was just low enough so that most people would not consider it a danger. In fact most people would choose to step over the box rather than retrace their steps to another exit. The court finds that reasonable, prudent persons in the position of defendant's employees would have foreseen that a few of the many individuals who stepped over the box would trip or lose their balance. Certainly it is not uncommon to find older persons, preoccupied persons and enfeebled persons walking in a hospital courtyard towards an exit gate.

It is also important to note that defendant, Stanley Magic Door Inc., is in the business of installing doors. Accordingly its employees knew or should have known what constitutes an appropriate warning to caution the

unwary in the vicinity of a construction site. Plastic tape marked "caution" suspended from sawhorses, pylons, good signs and other proper warning means of a similar nature are in common use and readily available most places. Instead, defendant *deliberately* placed an ill-suited, incompetent device on a well-traveled walkway and ignored the reality that sooner or later someone would stumble or fall because of it.

The irony of all this is that due to defendant's negligence the warning device itself became the instrumentality of injury. Had the box been substantially higher it might have been reasonable to use it to cordon off the area. Unfortunately, it was just low enough to encourage persons, even 83-year-old persons, to step over it.

Dr. Beizer was, of course, negligent as well and his negligence was a substantial factor in bringing about his own injuries. The court found that the causal negligence of defendant, Stanley Magic Door Inc., was 50 percent and that the causal negligence of plaintiff Lawrence M. Beizer M.D. was 50 percent.

## III. DISCUSSION OF THE LAW

In deciding a motion for judgment n.o.v., the court must draw all reasonable inferences in favor of the prevailing party and resolve all doubts in that party's favor. *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). See also, *Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970) and *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 414 A.2d 100 (1980). All questions of fact are to be left for the trier of fact. *Ludmer v. Nernberg,* 433 Pa. Super. 316, 640 A.2d 939 (1994). Judgment n.o.v. may be entered when it is determined that the moving party is entitled to a judgment as a matter of law. *Atkins*

*v. Urban Redevelopment Authority of Pittsburgh,* 263 Pa. Super. 37, 396 A.2d 1364 (1979), *affirmed in part, dismissed in part,* 489 Pa. 344, 414 A.2d 100 (1980).

The elements of a cause of action for negligence such as the one before the court are (1) proof of a duty of care on the part of the defendant to the plaintiff, (2) proof that the duty was breached by the defendant, (3) proof that the breach of duty was a substantial factor in bringing about harm to plaintiff, (4) proof of damages. *Reilly v. Tiergarten Inc.,* 430 Pa. Super. 10, 633 A.2d 208 (1993); *Taylor v. Jackson,* 164 Pa. Commw. 482, 643 A.2d 771 (1994); *Yosuf v. U.S.,* 642 F. Supp. 415 (M.D. Pa. 1986).

Defendant contends that the court erred in finding that plaintiff, Lawrence M. Beizer, was only 50 percent causally negligent and not more than this. Defendant also contends that its own causal negligence, if any, was less than 50 percent. Defendant contends that the affirmative defense of "assumption of risk" applies to the facts of this case and that therefore plaintiff cannot recover as a matter of law. Finally, defendant contends that plaintiff failed to prove that the box caused the fall.

Defendant contends that the box as described by Dr. Beizer was open, obvious and avoidable and therefore defendant did not have a duty to protect plaintiff against it. In *Berman v. Radnor Rolls Inc.,* 374 Pa. Super. 118, 542 A.2d 525 (1988), the Superior Court held that the "no duty" concept differs from the assumption of risk defense in that the no duty concept applies to a particular plaintiff/defendant relationship *(i.e.* business invitee/possessor of land). The *Berman* court held:

"These cases establish that a possessor of land has no duty to protect a business invitee against 'known' or 'obvious' hazards. For a danger to be 'known' to

the invitee, it must 'not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated.' *Carrender v. Fitterer,* 503 Pa. [178] at 185, 469 A.2d [120] at 124 [1983] (quoting Restatement (Second) of Torts §343A comment b). A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgement.' *Id.* 503 Pa. at 185, 469 A.2d at 123 (quoting Restatement (Second) of Torts §343A comment b)." *Berman, supra* at 132, 542 A.2d at 531.

The court further held:

"In contrast to the 'no duty' theory, the defense of assumption of the risk requires that the defendant show that the plaintiff was 'subjectively aware of the facts which created the danger and . . . must have appreciated the danger itself and the nature, character and extent which made it unreasonable.' *Crance v. Sohanic,* 344 Pa. Super. 526, 530, 496 A.2d 1230, 1232 (1985), quoting *Weaver v. Clabaugh,* 255 Pa. Super. 532, 388 A.2d 1094 (1978). The plaintiff's encountering of the risk must also have been voluntary. *Marinelli v. Montour R.R. Co.,* 278 Pa. Super. 403, 420 A.2d 603 (1980); Restatement (Second) of Torts §496E, comment c (1977)." *Id.* at 133-34, 542 A.2d at 532.

In the case at bar the court finds the "no duty" concept to be inapplicable because defendant Stanley did not have a special relationship with plaintiff nor was it an owner/occupier of land. Stanley was a contractor hired by Graduate to replace or maintain a set of doors and defendant cannot be reasonably characterized as an "occupier" of the premises.

The Pennsylvania courts have struggled with the application of the assumption of risk defense since the enactment of the Comparative Negligence Act, 42 Pa.C.S. §7102 (1976). In *Fish v. Gosnell,* 316 Pa. Super. 565, 463 A.2d 1042 (1993),. the Pennsylvania Superior Court addressed the effect of the Pennsylvania Comparative Negligence Act on the assumption of the risk defense, "[S]ince the advent of comparative negligence, 42 Pa.C.S. §7102 (effective September 7, 1976), careful attention to the nature of the judicially created assumption of [the] risk defense has become essential to ensuring the proper outcome of a case, for assumption of risk wholly bars recovery, whereas comparative negligence permits even a 50 percent negligent plaintiff to recover. *E.g., Bortner v. Gladfelter,* 302 Pa. Super. 492, 488 A.2d 1386 (1982)." *Id.* at 576, 463 A.2d at 1048.

In addition the court stated:

"Assumption of [the] risk and comparative negligence may sometimes overlap because certain conduct may exhibit all the elements of both. See *Bortner v. Gladfelter, supra; Takach v. B.M. Root Co.,* 279 Pa. Super. 167, 420 A.2d 1084 (1980); *Weaver v. Clabaugh, [supra].* However, assumption of [the] risk as a separate defense has a distinct character. All voluntary risk-taking that can be described by the ambiguous phrase 'assuming risk' does not constitute the defense. *Rutter v. Northeastern Beaver County School District,* 496 Pa. at 612-13, 437 A.2d at 1209, citing *Tiller v. Atlantic Cost Line Railroad Co.,* 318 U.S. 54, 72, 63 S.Ct. 444, 453, 87 L.Ed. 610 (1943) (Frankfurter, J., concurring). Rather all elements of the defense—that the plaintiff 'fully understands' the specific risk, 'voluntarily chooses' to encounter it, and 'under circumstances that manifest a willingness to accept it'—must be 'demonstrat[ed]

. . . in fact' before the theory will be submitted to the jury. *Marinelli v. Montour R.R. Co.,* 278 Pa. Super. 403, 416-17, 420 A.2d 603, 610 (1980)." *Id.* at 576-77, 463 A.2d at 1048.

Instantly the facts establish that Dr. Beizer lacked any subjective awareness of a potential injury; plaintiff testified that he did not anticipate any danger in his attempt to step over the box nor did he believe the box to be dangerous.

In addition, Dr. Beizer was only 10 feet away when he first saw the box and continued on his path without hesitation. This becomes an important factor in assessing whether Dr. Beizer intelligently acquiesced in a known danger. *Fish v. Gosnell,* stated:

"Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of [the] risk. *Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of the right to complain, but rather it is judged by its reasonableness, that is, by negligence principles."* *Id.* at 578, 463 A.2d at 1049. (emphasis added)

This court finds that Dr. Beizer's decision to continue on the path and step over the box was reasonable. The time between when he first saw the box and his attempt to cross it was short. Plaintiff's conduct was properly analyzed by this court under the concept of negligence. The court found that Dr. Beizer made in a matter of seconds a decision and did not "acquiesce to a known danger." No time-consuming thought process by the doctor went into his decision to step over the box.

The doctor's reaction to the box was almost automatic. Had the box been higher or wider it might have been

different. Had the structure been a jagged piece of metal or barbed wire and not this box it might have been different, but such was not the case. The object was an innocuous looking cardboard box which many if not most people would have stepped over without a thought. Under the circumstances the court properly applied comparative negligence principles.

Assumption of the risk issues require a factual determination by the court as to whether or not the plaintiff, being subjectively aware of the presence of a dangerous situation, chose to encounter it despite the risk. In *Berman v. Radnor Rolls, supra,* a roller skater was found not to have assumed the risk when he rolled off the rink into the snack area and was injured when he fell off a small ledge. The Superior Court in that case held that the hazard of falling off the ledge was not so obvious as to trigger assumption of the risk. "The danger would have to be apparent to the reasonable man in the position of the visitor exercising normal perception intelligence and judgement." *Id.* at 137, 542 A.2d at 534

Alternatively, in *Fish v. Gosnell, supra,* the plaintiff, who was hit by a car while in the street at the end of his driveway cleaning snow off his tractor, was not considered to have assumed the risk. The court denied the defendant's claim of assumption of the risk stating "[v]oluntary assumption of the risk involves a subjective awareness of the risk inherent in an activity and a willingness to accept it. A plaintiff has voluntarily assumed the risk where he fully understands it and voluntarily chooses to encounter it." *Id.* at 575, 463 A.2d at 1047.

Justifiably, plaintiff believed he could safely step over the box without difficulty and this court found that the box did not constitute an obstacle that a reasonable person exercising normal judgement, perception, and

intelligence would view as a potentially dangerous situation.

Defendant also contends that plaintiff did not prove that the box was the cause of the fall. Plaintiff was not exactly sure of the mechanics of the fall but testified that he either tripped or lost his balance when going over the box. (T. 3/18/96, 114.) When cross-examined, Dr. Beizer testified that but for the presence of the box, he would not have fallen. (T. 3/18/96, 172.) Moreover, plaintiff testified that he had never fallen in the past and was in good health and physical condition. There is no evidence to the contrary and the facts must be viewed in the light most favorable to the verdict winner. Accordingly, plaintiff met his burden of proving that the negligent placement of the box was a substantial factor in bringing about his injuries.

Defendant contends that plaintiff's acknowledgement of two other exits and his decision to use the 19th Street exit constitute more than 50 percent causal negligence under the "choice of ways" doctrine. Defendant alleges that plaintiff voluntarily chose to proceed towards the 19th Street gateway with the knowledge that there were at least two other exits he could have used and assumed the risk of using a safer route. Defendant alleges that plaintiff noted the box when he was 10 feet away and had plenty of time to consider another route. Plaintiff contends that in failing to retrace his steps and walk an additional distance to the parking lot he did not assume the risk since the box did not constitute an unreasonable risk. In *O'Brien v. Martin,* 432 Pa. Super. 323, 638 A.2d 247, the Pennsylvania Superior Court stated "that Pennsylvania courts have generally been loath to apply the [choice of ways] doctrine" and added "in [the] very few cases where this doctrine has been applied to find that the plaintiff was

contributorily negligent, *the danger the plaintiff chose to confront was indisputably obvious." Id.* at 328, 638 A.2d at 249. (emphasis added)

The rule is not meant to impose an unreasonable burden on travel.

In the case at bar, plaintiff was 10 feet away from the box and outside of the hospital building. The court has found that contrary to the defendant's contention, plaintiff did not have sufficient time to make a deliberate determination. It is not as if the box had been fixed on the site for a sufficient period of time so that defendant knew about it well before he encountered it. Plaintiff made in a matter of seconds a decision to cross an obstacle which he believed he could easily step over. It would be unreasonable to employ hindsight to find on this record that as a matter of law plaintiff was bound to go to a different exit. The court cannot find that the "choice of ways" doctrine is appropriate.

Finally, defendant contends that plaintiff was more than 50 percent causally negligent. To sum up on this point defendant deliberately placed the box in a position where it was only a matter of time before an accident happened. On the other hand, plaintiff's causal negligence consisted of his failure to sufficiently perceive the necessity of stepping over the box in a careful manner or retracing his steps if he could not do this. Most comparative negligence cases are balanced in terms of round numbers and it is difficult to balance any case down to a fine difference. Nevertheless, the box did not serve as an effective barrier or warning but was a hazard to others. It is the court's opinion that defendant was at least 50 percent causally negligent for the deliberate act of its employees in positioning the box where it was. Under the facts of this case reasonable minds can differ as to whether the plaintiff

was 50 percent causally negligent or greater. It is therefore not a question of law but must be decided by the fact-finder.

Defendant also contends that the verdict entered in favor of Lillian Beizer is barred by the doctrine of waiver since her consortium claim was entered well after the trial. Defendant claims that after the verdict was announced in favor of Dr. Beizer, there was no objection or request by plaintiff's counsel with regard to Lillian Beizer's loss of consortium claim. Defendant relies on Pa.R.C.P. 227.1(b) which provides as follows:

"(b) Post-trial relief may not be granted unless the grounds therefor, (1) if then available, were raised in pretrial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and (2) are specified in the motion. The motion shall state how the grounds were asserted in pretrial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds."

This court finds this rule inapplicable with regard to the facts of this matter. It is important to note that this was a non-jury trial and the court's verdict is an interlocutory order. It is well established that the courts have discretion to modify and correct orders where justice demands. See *In re Appeal of Duquesne Club,* 92 Pa. Commw. 15, 498 A.2d 459 (1985). In that case, the trial judge sitting as a fact-finder issued a corrected non-jury decision. The Commonwealth Court held that the court's action was sua sponte and the authority for its action lies in 42 Pa.C.S. §5505 which states:

"Except as otherwise provided by or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry,

notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." *Id.* at 18, 498 A.2d at 461.

In the instant matter the verdict was not reduced to judgment and therefore was well within the time to modify its order to include Lillian Beizer's loss of consortium of $30,000 less 50 percent comparative negligence for a net award of $15,000.

Specifically, in the matter of *Key Automotive Equipment v. Abernethy,* 431 Pa. Super. 358, 636 A.2d 1126 (1994), the court held:

"It is well settled that a trial court has the inherent power to reconsider its own rulings. *Hutchison by Hutchison v. Luddy,* 417 Pa. Super. 93, 107, 611 A.2d 1280, 1288 (1992). The statute which limits the time for reconsideration of orders to 30 days is applicable only to final orders. *Id.* (citing *Daywalt v. Montgomery Hospital,* 393 Pa. Super. 118, 573 A.2d 1116 (1990)); 42 Pa.C.S. §5505. When considering an interlocutory order, however, the trial court is not bound by the 30-day limitation. *Id.* An order is interlocutory and not final if it does not effectively place the litigant out of court or otherwise end the lawsuit. *Commonwealth v. Van-Buskirk,* 303 Pa. Super. 148, 149, 449 A.2d 621, 622 (1982)." *Id.* at 362, 636 A.2d at 1128.

Because this matter is in the post-trial phase and no final judgment has been entered, this court has the discretion to modify its decision. The court is not bound by the 30-day limitation prescribed in 42 Pa.C.S. §5505. Furthermore, it is noted that on March 27, 1996 which was eight days after the adjudication the court held a meeting which was attended by both counsel. This meeting was specifically scheduled for the purpose of considering the question of awarding damages for loss of consortium. Because at least one of the parties re-

510

quested time to submit a brief, a hearing was rescheduled for May 2, 1996. At the conclusion of the May 2 hearing, the court entered an amended adjudication awarding Mrs. Beizer $15,000 for loss of consortium.

At the May 2 hearing the court stated:

"I remember the case clearly, it's a simple case, and I remember the wife's testimony about how she had to drive him everywhere, she had to take care of him in his home for a long period of time, I remember the brace he had on his neck where he could not move. It was a lot of work she had to go through and she had—I remember about when he crossed the street he had to turn his whole body because he could not turn his head, I remember the wife couldn't go and see her friends at all for a long period of time.

"There was a lot of testimony along those lines about it. She definitely made out a claim for consortium, in my opinion, and unfortunately it was not followed through with, but it was mentioned to me over the phone two or three days later and then we had a meeting a few days after that—well within the 10-day period, and then we had the actual motion filed. I think it all makes out a proper request for relief from this oversight, and I would have to say that I think it would be wrong for me not to consider the question at this point and . . . I am going to add $15,000 for the wife.

"Mr. Winicov: If Your Honor please is that the net sum?

"The court: That's the net. It would have been more, $30,000." (T. 5/2/96, 18-19)

Accordingly, plaintiff Lillian Beizer did not waive her right to loss of consortium, and the modification of the original adjudication of March 19, 1996 to include an award for loss of consortium was proper.

## IV. DELAY DAMAGES

This court has granted plaintiff Dr. Beizer's motion for delay damages in the amount of $18,579.51 to be added to the award of the court in the amount of $200,000 for a total award of $218,579.51.

The facts established plaintiffs commenced this action on or about December 1, 1994, and a non-jury verdict was rendered March 19, 1996. The facts also establish this matter was tried in October of 1995, before the Honorable Ethan Allen Doty. Judge Doty mentioned, before the trial started, that he had a conflict of interest with the defendant's, Graduate Hospital's, attorneys Mesirov, Gelman, Jaffe, Cramer and Jameson; in that a partner from that firm represented Judge Doty in a prior personal matter. Judge Doty offered, before the trial started, to recuse himself. The parties agreed that Judge Doty would be able to hear the case. At the conclusion of the trial before Judge Doty rendered a decision, plaintiff's attorney requested, in a letter dated December 5, 1995, for Judge Doty to recuse himself. Judge Doty thereafter recused himself. As a result of Judge Doty's recusal this matter was not scheduled for trial until March 18, 1996. The court finds that the additional delay was caused by plaintiff's actions, and therefore the additional time is excludable from the calculation of delay damages.

With regard to delay damages for plaintiff Mrs. Beizer, this court grants plaintiff Mrs. Beizer's motion for delay damages in the amount of $1,392.24 to be added to the award of the court in the amount of $15,000 for a total award of $16,392.24.

The facts establish that this court, on May 2, 1996, amended the original order, and awarded Mrs. Beizer $15,000 for loss of consortium. The plaintiff filed a

motion for delay damages and the defendant replied. The plaintiff then agreed to adopt the defendant's calculation of delay damages in the amount of $1,392.24 to supplement Mrs. Beizer's award for her loss of consortium.

In summary, defendant's post-trial motion is denied.